UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| V.R. VALLERY | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:**    (In Chambers:)
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION AND STAY PROSECUTION OF COMPLAINT** (filed 06/02/10)

**DEFENDANT/COUNTERCLAIMANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM** (filed 06/15/10)

## I.    INTRODUCTION

On December 8, 2009, plaintiff Fadal Machining Centers, LLC ("Fadal") filed the instant action against defendant Mid-Atlantic CNC, Inc. ("Mid-Atlantic") alleging claims for (1) breach of contract and (2) breach of the duty of good faith and fair dealing. On February 4, 2010, Mid-Atlantic filed its answer and asserted counterclaims against Fadal and MAG Industrial Automation Systems, LLC ("MAG") alleging claims for (1) breach of contract; (2) improper termination of franchise pursuant to the Franchise Relations Act, Cal. Bus. & Prof. Code §§ 20000-20041 and N.J. Stat. Ann §56:10-5.; and (3) fraud. On March 17, 2010, Fadal and MAG filed their answer to defendant's counterclaim.

On June 2, 2010, Mid-Atlantic filed a motion for judgment on the pleadings, or, in the alternative, to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, to compel arbitration and stay prosecution of the complaint. On June 15,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

2010, Mid-Atlantic filed a motion for leave to amend its answer and counterclaim. On June 30, 2010, Fadal and MAG filed their opposition to both motions. Mid-Atlantic filed replies on July 12, 2010. A hearing was held on July 26, 2010, and the Court took the matter under submission. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   BACKGROUND

On October 3, 2005, plaintiff Fadal entered into a Distributor Agreement ("Distributor Agreement") with defendant Mid-Atlantic, whereby Mid-Atlantic agreed to purchase and market machines and machine-related parts (collectively "goods") from Fadal. Compl. ¶ 8, Distributor Agreement ¶ 3. The Distributor Agreement contains a provision stating that "[a]ny action, claim, suit or proceeding between the parties, including but not limited to, those connection [sic] with or arising out of or related to this Agreement . . . shall be initiated and prosecuted as to all parties . . . solely and exclusively in the United States District Court, for the Central District, State of California . . . ." Distributor Agreement ¶ 15(d). The Distributor Agreement also states that "[t]he terms of sale shall be those established from time to time by [Fadal]. Any additional or different terms submitted by [Mid-Atlantic] will be void and of no effect." Distributor Agreement ¶ 5(c).

Fadal alleges that when purchasing goods, Mid-Atlantic would first submit purchase orders to Fadal. Compl. ¶ 10. Fadal alleges that after it approved and filled the orders, Mid-Atlantic would receive the ordered goods with a corresponding invoice from Fadal. Id. Each unpaid invoice attached to plaintiff's complaint states: "For Terms & Conditions of Sale: WWW.FADAL.COM/TERMS." See Invoice. The Terms and Conditions of Sale on plaintiff's website states in relevant part:

> 1. CONTRACT
> These Terms and Conditions and any agreement or specifications agreed to in writing by FADAL and Customer shall constitute collectively the entire contract between FADAL and Customer. In the event of any conflict between these Terms and Conditions and any other such agreement or specifications, these Terms and Conditions shall prevail . . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

> 11. ARBITRATION
> (a) Any controversy or claim arising out of or relating to this agreement, or the breach thereof shall be resolved through arbitration held in Los Angeles, California under Title 9, United States Code "Arbitration" (the "U.S. Federal Arbitration Act") . . . . Any claim for arbitration must be filed in writing with the American Arbitration Association in Los Angeles and a copy sent to the other party within six (6) months after the act, omission or alleged breach that gave rise to the claim or controversy. Otherwise, the right to any remedy will be deemed forever waived.[1]

Mot. at 2, Terms and Conditions of Sale ¶¶ 1, 11(a).

According to Fadal, it has delivered all ordered goods to Mid-Atlantic and satisfied all other conditions precedent to Mid-Atlantic's obligation to pay Fadal the full amount stated on the invoices. Id. at 11. Moreover, Fadal alleges that Mid-Atlantic has accepted all goods that it had ordered from Fadal and that such acceptance was not revoked. Id. at 12. Fadal further alleges that despite having accepted all goods from Fadal, Mid-Atlantic has either failed or refused to pay for the goods it received and has thereby accumulated an unpaid and overdue account balance of $383,205.21, plus interest. Id. at 13.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. The objection

---

[1] Mid-Atlantic requests that the Court take judicial notice of two filings with the Court. Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986). As such, judicial notice is proper insofar as judicial notice is taken that these two court filings were made. The Court GRANTS Mid-Atlantic's request for judicial notice to the extent that the Court take judicial notice that these two documents were filed with the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

presented by this motion is that the court has no authority to hear and decide the case. This defect may exist despite the formal sufficiency of the allegations in the complaint. See T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D. N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964) (the formal allegations must yield to the substance of the claim when a motion is filed to dismiss the complaint for lack of subject matter jurisdiction). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).

### B. Arbitration

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitrations agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 24 (1983)).

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **JS-6** |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

If the trier of fact finds that no agreement in writing for arbitration was made then the proceeding shall be dismissed, but if the trier of fact finds that an agreement for arbitration was made then the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof. See 9 U.S.C. § 4.

### C. Leave to Amend

Because the Court has entered a pretrial scheduling order that established a deadline of June 15, 2010 for amending pleadings and adding parties, and Mid-Atlantic filed its motion for leave to amend on June 15, 2010, Fed. R. Civ. P. 15 applies. Fed. R. Civ. P. 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Where leave to amend is required, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir.2003)). "Some courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). However, "[u]ndue delay is a valid reason for denying leave to amend.'" Id. (quoting Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990)); but see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend."). Further, "the liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party. Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." Jordan, 669 F.3d at 1324. And "[l]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan, 49 F.3d at 1370 (internal quotation marks and citation omitted). Delay can contribute to a finding of prejudice, for "expense, delay, and wear and tear on individuals and companies count toward prejudice."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

Id. (internal quotation marks and citation omitted).

### IV.   DISCUSSION

#### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Mid-Atlantic asserts that the Distributor Agreement expressly incorporates by reference the Terms and Conditions of Sale, which requires that Fadal submit its claims to arbitration. Mot. at 4. Mid-Atlantic argues that because Fadal has never filed or served a claim for arbitration, let alone brought a claim within six months after the alleged breach as required by the Terms and Conditions of Sale, Fadal waived its right to any remedy.[2] Id. at 8. Thus, Mid-Atlantic contends that Fadal has failed to state a plausible claim for relief and its complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c) and 12(h)(2)(B). Id. at 9. Moreover, Mid-Atlantic argues that the Court should dismiss the complaint because an arbitration agreement governs the claims at issue in the instant action. Id. (citing Fadal Machining Ctrs., LLC v. Compumachine, Inc., CV 09-648 PA (FFMx), C.D. Cal. (filed Sept. 4, 2009) (granting Compumachine's motion to dismiss Fadal's complaint because the court determined that the Distributor Agreement and incorporated Terms and Conditions of Sale required that any dispute relating to said agreement be submitted to binding arbitration)).

Fadal responds that Mid-Atlantic's motion for judgment on the pleadings must fail because its argument assumes that the Terms and Conditions of Sale constitutes contractual terms between Fadal and Mid-Atlantic and that such a determination is a

---

[2] Mid-Atlantic asserts that the payment term on each invoice attached to the complaint was "Net 30 Days." Mot. at 6; see Invoice. As such, Mid-Alantic asserts that the most recent invoice from Fadal to Mid-Atlantic, dated January 26, 2009, was due on March 2, 2009 according to the express terms of the purchase order. Id. at 6-7. Therefore, Mid-Atlantic argues that the very last day by which Fadal could have filed a claim for arbitration as to any part of its claims for unpaid goods would have been September 2, 2009, two months before it filed its complaint on December 8, 2009. Id. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

question of fact for a jury. Opp'n at 5 (citing Minnesota Live Ins. Co. v. Ensley, 174 F.3d 977, 982-83 (9th Cir. 1999)). In addition, Fadal asserts that the Distributor Agreement is explicit in its provisions for any kind of change, amendment, or modification.[3] Id. Fadal argues that because Mid-Atlantic never indicated its acceptance of any terms contained in the Terms and Conditions of Sale of the invoice upon which Mid-Atlantic relies, no modification of the Distributor Agreement has occurred, and thus Mid-Atlantic cannot assert that the Distributor Agreement incorporates the Terms and Conditions of Sale. Id.

Mid-Atlantic replies that the Distributor Agreement does not govern the sale of goods between Fadal and Mid-Atlantic because it does not provide terms material to a contract for the sale of goods, and instead the function of the Distributor Agreement is to govern Fadal's relationship with Mid-Atlantic as a distributor. Reply at 4. Thus, Mid-Atlantic argues that because the Distributor Agreement is not related to the sale of any specific goods, the invoice and the Terms and Conditions of Sale incorporated therein should be considered as a separate contract for the sale of goods.[4] Id. Moreover, Mid-

---

[3] The Distributor Agreement, in relevant part, provides:

14. Amendments to Agreement
(a) Company may at any time propose an amendment to this Agreement. Distributor shall indicate its acceptance of any such amendment by returning two (2) executed copies thereof to company. The amendment shall become effective on the date executed by Company, who shall retain one (1) executed copy of the amendment and shall return the other executed copy to Distributor.

Id. at 8, Distributor Agreement ¶ 14(a).

[4] At oral argument on July 26, 2010, Fadal argued that if the Court finds that separate contracts were formed each time Mid-Atlantic submitted purchase orders to Fadal and Fadal accepted Mid-Atlantic's "offer" by sending its goods along with invoices that referred to the Terms and Conditions of Sale, then the Court must find that the arbitration provision in the Terms and Conditions of Sale in Fadal's "acceptance" was a "material alteration" to Mid-Atlantic's "offer" pursuant to California Commercial Code § 2207 because the purchase order did not include an arbitration provision. See Windsor Mills v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 995 (1972) (holding that "a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

Atlantic asserts that Paragraph 5(c) of the Distributor Agreement gives Fadal the unilateral right to set the Terms and Conditions of Sale to each individual sale of goods without a written amendment to the Distributor Agreement, by stating: "The terms of sale shall be those established from time to time by [Fadal]. Any additional or different terms submitted by [Mid-Atlantic] will be void and of no effect." Distributor Agreement ¶ 5(c)." As such, Mid-Atlantic argues that Fadal's argument over whether the Terms and Conditions of Sale constitutes a modification of the Distributor Agreement is moot. Id. at 6.

"An agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). As with any other contract dispute, the Court must first look to the express terms of the contract. Id. Here,

---

provision for arbitration inserted in the acceptance or confirmation of an offer to purchase goods 'materially alters' the offer."). Under California Commercial Code § 2207, because an arbitration provision "materially alters" a contract, this additional term does not become part of the contract unless both parties explicitly agree to it. See id. However, the Court finds that the sales agreements are not separate from the Distribution Agreement, but instead together form an integrated whole. Indeed, in the Distributor Agreement, Mid-Atlantic and Fadal agreed that Mid-Atlantic would purchase and market Fadal's goods, and Mid-Atlantic did so by submitting purchase orders to Fadal which were in turn filled by Fadal. Moreover, by its agreement to sell goods to Mid-Atlantic

(footnote 4 continued)
Fadal agreed to comply with its own terms of sale, including but not limited to the agreement to arbitrate.

Indeed, the Court finds that the parties previously agreed in the Distribution Agreement to give Fadal the unilateral right to establish the terms of sale of its goods, which Fadal did on its website and included an arbitration agreement therein. Accordingly, the Court finds that the arbitration provision did not alter the terms of the agreement between the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

by looking at the terms of the Distributor Agreement and Terms and Conditions of Sale, the Court finds that the Terms and Conditions of Sale creates a valid agreement to arbitrate. See Chiron, 207 F.3d at 1130. The Distributor Agreement gave Fadal the unilateral right to set forth the terms of sale, and Fadal did so in establishing the Terms and Conditions of Sale, wherein Fadal elected to have controversies related to the sale of its products submitted to arbitration. See Terms and Conditions of Sale ("Any controversy or claim arising out of or related to this agreement, or the breach thereof shall be determined and settled solely and exclusively by arbitration . . . ."). Moreover, the Terms and Conditions of Sale state that "[i]n the event of any conflict between these Terms and Conditions and any other such agreement or specifications, these Terms and Conditions shall prevail." The instant controversy for the nonpayment of goods sold is one such controversy related to the sale of Fadal's products, which is covered by the arbitration agreement. The Court declines to determine whether Fadal's claims are timely brought, as that is the province of the arbitrator. See Wren v. Sletten Constr. Co., 654 F.2d 529, 537 (9th Cir. 1981) ("Whether or not a claim is barred by time limitations is not for the court to decide; it must be submitted to an arbitrator."). Accordingly, the Court GRANTS Mid-Atlantic's motion to dismiss without prejudice to its being renewed before an arbitrator. The Court DENIES as moot Mid-Atlantic's motion for judgment on the pleadings and motion to compel arbitration and stay prosecution.

### B. Motion for Leave to File a First Amended Answer and Counterclaim

Mid-Atlantic requests leave to file a first amended answer and counterclaim in order to supplement the existing second and third claims for improper and wrongful termination of a franchise against Fadal, and to add three additional parties to the counterclaim: Giddings & Lewis Machine Tools, LLC ("Giddings"), Cincinnati Machine, LLC ("Cincinnati"), and Lamb Assembly & Test, LLC ("Lamb"). Mot. at 3. Mid-Atlantic alleges that beginning with a contract with Giddings (the then owner of Fadal), Mid-Atlantic was granted the exclusive right to distribute computer controlled machine tools and parts in New Jersey and parts of Pennsylvania, and that in 2005, MAG purchased Fadal from Thyssenkrupp, which had acquired Fadal from Giddings in 1999. Id. at 4. According to Mid-Atlantic, in 2008, Fadal's sale of repair parts was transferred to another subsidiary of MAG—Cincinnati—but that throughout the change in ownership and business structure, Mid-Atlantic continued to successfully distribute computer controlled machine tools and parts with no substantive change in the nature of their business. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

Mid-Atlantic asserts that on December 22, 2009, the same executive from MAG sent Mid-Atlantic written notices terminating the various contractual relationships between Mid-Atlantic and Fadal, MAG, Giddings, Cincinnati, and Lamb. Id. According to Mid-Atlantic, these agreements were improperly terminated. Id.

     Mid-Atlantic argues that the FAC only adds one new claim against the existing counter-defendants for termination of a representative agreement with Mid-Atlantic in violation of New Jersey law, and that its claims against the proposed counter-defendants arise out of the same series of transactions and occurrences. Id. at 5.

     Fadal and MAG respond that the three new entities are located in three different states—Wisconsin, Ohio, and Illinois—and Mid-Atlantic desires to sue the new parties based on two separate written agreements, but the agreement with Cincinnati contains choice of law and venue provisions for the state of Kentucky, the agreement with Giddings contains choice of law and venue provisions for the state of Wisconsin, and Mid-Atlantic puts forth no written agreement between it and Lamb. Opp'n at 1. Fadal and MAG argue that the proposed amended counterclaim does not allege any alter ego theory with respect to Giddings, Cincinnati, and Lamb, and simply states that each of the three companies breached separate agreements with Mid-Atlantic, but that the purported agreements are not all attached to the proposed amended counterclaim. Id. at 2. Accordingly, Fadal and MAG argue that if Mid-Atlantic's motion is granted, the jury will be faced with alleged breaches of numerous and different contracts, based on separate acts, with all facets of the respective disputes to be decided under the laws of at least three different states. Id. at 4. Furthermore, Fadal and MAG contend that the proposed amendments to add the three parties would be futile because the written agreements attached contain enforceable choice of venue and choice of law provisions. Id.

     Mid-Atlantic replies that contrary to Fadal's arguments, joinder of the new parties is proper under Fed. R. Civ. P. 20, because of their relationship with Fadal and MAG. Reply at 4. According to Mid-Atlantic, one of its primary theories is that Fadal acted in concert with the parties sought to be added to skirt statutory protection of franchisees by terminating "for cause" as many franchisees as possible and merely rebranding existing products under different marks. Id. at 5. Moreover, Mid-Atlantic contends that the addition of the new parties would not create confusion because the claims are related and application of other jurisdictions' laws is not required, as all of the new claims arise under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

the New Jersey Franchise Practices Act (rather than breach of contracts claims) which is already at issue in the original answer and counterclaim. Id. at 6. Mid-Atlantic argues that the New Jersey Supreme Court has previously held choice of venue provisions in contracts involving New Jersey franchisees to be presumptively invalid unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly. Id. at 9 (citing Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc., 680 A.2d 618, 626 (N.J. 1996)).

     First, to the extent the proposed counterclaim asserts claims that are defenses to Fadal's case-in-chief, those claims must be arbitrated for the reasons set forth above. Second, to the extent Mid-Atlantic claims that Fadal is in breach of the exclusivity provisions of the Distribution Agreement, the Court finds that those claims are also subject to arbitration. As set forth above, the Court has found that the sales agreements are not separate from the Distribution Agreement. Accordingly, the Court concludes that Mid-Atlantic should not be granted leave to amend its counterclaim as against Fadal because those claims are also subject to arbitration.

     Finally, to the extent that Mid-Atlantic proposes to amend its counterclaims to add Giddings, Cincinnati, and Lamb as additional parties, the Court concludes that unnecessary confusion and undue prejudice would result, because the counterclaims involve contracts with each new party that differ and are separate from the agreements at issue in the instant matter. More importantly, it appears that the addition of the three parties would be futile because the Court lacks jurisdiction over them due to the forum selection provisions in each of the contracts at issue. Accordingly, the Court DENIES Mid-Atlantic's motion for leave to amend.

## V.   CONCLUSION

     In accordance with the foregoing, the Court GRANTS Mid-Atlantic's motion to dismiss for lack of subject matter jurisdiction without prejudice to its being renewed before an arbitrator, and DENIES as moot Mid-Atlantic's motion for judgment on the pleadings and motion to compel arbitration and stay prosecution. The Court DENIES Mid-Atlantic's motion to file a first amended answer and counterclaim.

     IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | CV 09-9019 CAS (Ex) | Date | August 25, 2010 |
| Title | FADAL MACHINING CENTERS, LLC., v. MID-ATLANTIC CNC, INC. | | |

: n/a

Initials of Preparer    VRV/pdp